**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

LEWIS ERIC OWENS,

    *Plaintiff*,

  v.             Civil No.: **1:23-cv-01367-JRR**

WARDEN MICHAEL BIVENS, *et al.*,

    *Defendants*.

<u>**MEMORANDUM OPINION**</u>

Pending before the court is Defendants Warden Carlos Bivens, Joe Schenck, Brian Coulter, and Roxbury Correctional Institution's ("RCI") Motion to Dismiss, or, in the Alternative, for Summary Judgment with Request for Entry of a 28 U.S.C. § 1915 Strike. (ECF No. 23; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion, construed as a motion to dismiss in part and a motion for summary judgment in part, will be granted in part and denied in part.

I.  **<u>BACKGROUND</u>**

On May 22, 2023, Plaintiff Lewis Eric Owens, at inmate at RCI, initiated this action against Defendant Warden Bivens and RCI, alleging that Defendants violated his federal constitutional rights. (ECF No. 1; the "Complaint.") Following the court's order, Owens filed a supplement to his Complaint on June 22, 2023, wherein he named additional Defendants John Does 1 through

3.[1]  (ECF No. 5; the "Supplement.")  John Doe 1 was subsequently identified as Schenck; John Doe 2 was subsequently identified as Coulter.  (ECF No. 19.)

Plaintiff has been housed at RCI since approximately July 15, 2022.  (ECF No. 1 at p. 4.) RCI is a correctional institution within Maryland's Department of Public Safety and Correctional Services ("DPSCS").  Plaintiff alleges that during his time at RCI: (1) he has been placed in "protective custody" housing; (2) he has been afforded "minimal and unconstitutional . . . recreation needs;" specifically, he is permitted to go outside only one or two times per month for a total of 30 to 45 minutes at a time; (3) Defendants failed to treat his medical needs, including injury to his ear and removal of a cyst on his testicle; and (4) RCI serves food that is cold in containers that have had bugs on them.  (ECF Nos. 1, 5.)  Affording Plaintiff's pleadings liberal construction pursuant to his *pro se* status, the court construes him to assert claims pursuant to 42 U.S.C. § 1983 that all arise under the Eighth Amendment to the United States Constitution.  Such claims fall into two general categories: (1) claims of deliberate indifference to serious medical needs, and (2) claims regarding other conditions of confinement that amount to cruel and unusual punishment.[2]

In his Complaint, Plaintiff alleges that "I am unable to file a grievance.  I've never even seen a 'grievance form' since I've been at this institution[,] only a 'complaint form' which they rarely respond to with these issues."  (ECF No. 1.)  Further, he attaches a "Notice" to his Supplement wherein he states that RCI "and its faculty do not sign [prisoners'] 'Request Forms'

---

[1] By order at ECF No. 4, the court granted Plaintiff leave to supplement his Complaint to name individuals as defendants who he believed were personally involved in providing unconstitutional conditions of his confinement.

[2] To the extent Plaintiff asserts new facts in his opposition to the Motion (or his supplement and separate motions related thereto), the court does not consider those allegations in ruling on the present Motion. Plaintiff may not amend his pleading through opposition to the Motion.  *See Nat'l Ass'n for Advancement of Colored People v. Bureau of Census*, 382 F. Supp. 3d 349, 377 n.17 (D. Md. 2019) (noting that an opposition to a motion to dismiss "is not a vehicle for amending a complaint"); *Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-CV-3193, 2015 WL 2227928, at *6 (D. Md. May 11, 2015) (explaining that it is "axiomatic" that a complaint may not be amended by briefs in opposition).

or grievances since they are 'misplaced' or destroyed by whoever is 'responding.'" (ECF No. 5-1.)

On March 25, 2024, Defendants filed the instant Motion, seeking dismissal or, alternatively, summary judgment, of all of Plaintiff's claims. (ECF No. 23.) On April 15, 2024, Plaintiff filed his response in opposition (ECF No. 35) and, separately, a supplement[3] (ECF No. 36). Plaintiff then filed a motion to compel discovery and answer interrogatories, which the court found premature (given the status of the case); affording Plaintiff liberal construction of his filing, the court further construed Plaintiff's submission as a Rule 56(d) submission and declaration that he could not answer the pending Motion absent discovery. In its responsive order, the court expressed that it was unpersuaded "that Plaintiff cannot answer Defendant's dispositive motion without discovery of additional information." (ECF No. 40.)

### A. Undisputed Facts[4]

The court identifies the following undisputed facts in reference to Plaintiff's use of the administrative grievance procedures and submission of administrative remedy complaints, referred to as "ARPs" by DPSCS. (Ex. 6, Jeffcoat Decl. ECF No. 23-8 ¶ 1.) From July 12, 2022 (Plaintiff's arrival at RCI), to March 15, 2024, Plaintiff has filed six ARPs. *Id.* ¶ 2. Only two of those ARPs were submitted before he filed this action on May 22, 2023—one on September 30, 2022 (Case No. 719-22), and one on January 30, 2023 (Case No. 62-23). *Id.* (ECF No. 23-8 at pp. 9, 11.) The September 30, 2022 ARP concerned the denial of outdoor recreation time. (ECF No. 23-8 at p. 9.) The January 20, 2023 ARP concerned a nurse's inability to find his seizure medication. *Id.* at

---

[3] The court denied Plaintiff's motion to strike at ECF No. 36; however, it construed the motion as a supplement to Plaintiff's opposition to the instant Motion. (ECF No. 40.)

[4] For reasons discussed more fully below, the court construes the Motion to seek summary judgment in part.

p. 11.  Plaintiff withdrew both of the aforementioned ARPs before RCI issued decisions (and before the initiation of this lawsuit).  *Id.* ¶ 2, pp. 8, 10.

After he filed this action, Plaintiff filed four additional ARPs—one was withdrawn, one stalled when he failed to file separate ARPs for each issue, one (unrelated to the allegations in this action) was dismissed on its merits, and one (also unrelated to the allegations in this action) was still in investigation at the time of this briefing.  (ECF No. 23-8 ¶ 2, pp. 15–17.)  Moreover, as of the date of Defendants' Motion, Plaintiff had filed only one grievance with the IGO that was submitted prior to his time at RCI.  (ECF No. 23-15 ¶ 2.)

## II.    LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(d)

Defendants seek dismissal of this action for failure to state a claim or, in the alternative, summary judgment.  "A motion with this caption implicates the court's discretion under Fed. R. Civ. P. 12(d)."  *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022).  Federal Rule of Civil Procedure 12(d) provides: "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  FED. R. CIV. P. 12(d).  "Pursuant to Rule 12(d), the Court has discretion to determine whether to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6) motion to a Rule 56 motion."  *Coleman v. Calvert Cnty.*, No. GJH-15-920, 2016 WL 5335477, at *3 (D. Md. Sept. 22, 2016) (citations omitted).

#### 1.  *Claims of Medical Deliberate Indifference*

As to Plaintiff's claims of deliberate indifference to his medical needs, the court does not need to consider matters outside the pleadings in ruling on the Motion, because Plaintiff has failed to allege sufficient facts in support of his claims.  Accordingly, it need not reach Defendants'

alternative arguments for summary judgment as to same. The court will therefore construe the Motion as a motion to dismiss pursuant to Rule 12(b)(6) to the extent it seeks dismissal of Plaintiff's claims for deliberate indifference in medical care. Similarly, the court declines to consider evidence outside the Complaint and its Supplement in ruling on the arguments related to such claims set forth in the Motion. *See Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021), *aff'd,* No. 21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022), and *aff'd,* No. 21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022) (setting forth the "general rule, [that] the court does not consider extrinsic evidence at the motion to dismiss stage; however, it is a well-recognized exception to this rule that the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the document is 'integral to the complaint and there is no dispute about the document's authenticity.'") (citation omitted).

   2. *Claims of Conditions of Confinement*

   The court next considers whether conversion of the Motion to one for summary judgment is appropriate as to Plaintiff's claims about the conditions of his confinement. "There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the Rule 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder v. Maryland Dep't of Transportation*, No. CV CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Where a movant expressly captions a motion as one for summary judgment "in the alternative," the non-movant is "on notice that this motion might be treated as one for summary

judgment"; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Second, customarily, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177.

The first requirement is plainly met here where Plaintiff had adequate notice that the Motion may be treated as a motion for summary judgment based on the caption of the Motion itself. *See Laughlin*, 149 F.3d at 260, *supra*. As to the second requirement, summary judgment is ordinarily inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *see Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (same). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) (same). Typically, "[a] nonmovant presents such opposition in the form of a Rule 56(d) affidavit, stating that he 'cannot present facts essential to [his] opposition.'" *Shaw*, 59 F.4th at 128. However, "even in the affidavit's absence, a district court abuses its discretion by granting summary judgment when it otherwise has 'fair notice of . . . potential dispute[s] as to the sufficiency of the summary judgment record.'" *Id.* (quoting *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021)). That said, a non-movant "may not demand discovery for discovery's sake; a Rule 56(d) request is properly denied 'where the additional evidence sought . . . would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" *Gardner v. United States*, 184 F. Supp. 3d 175, 181–82 (D. Md. 2016) (quoting *Strag v. Bd. of Trs.*, 55 F.3d 943, 954 (4th Cir. 1995)).

In the case at bar, Plaintiff appears to argue that discovery is necessary. (ECF Nos. 36, 38). Relevant here, Defendants assert that Plaintiff has failed to exhaust his administrative remedies as to his above-referenced claim. As explained in greater length below, the Prisoner Litigation Reform Act ("PLRA") prohibits persons who are incarcerated from filing actions under 42 U.S.C. § 1983 or other federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Defendants offers exhibits, as well as declarations from Amy Jeffcoat (Administrative Aide and Litigation Coordinator for RCI with DPSCS), Kristina Donnelly (Special Assistant to the Director of Patuxent Institution), and F. Todd Taylor, Jr. (Director of the Inmate Grievance Office ("IGO") with DPSCS, in support of their argument that Plaintiff did not fully exhaust the administrative grievance procedure prior to filing suit. (ECF Nos. 23-8, 23-14, 23-15.)

In response to Defendants' administrative exhaustion argument, Plaintiff asserts that Defendants "destroyed complaints if they feel [they] may be a liability" (ECF No. 35) and that he "asked to view video footage to show the times [he] submitted those 'ARPs'" to show they were never turned in and/or were destroyed. (ECF No. 36 ¶ 4.) While Plaintiff's Complaint and filings appear to challenge that his ARPs were investigated, critically, he does not dispute that he filed the ARPs (as demonstrated by Defendants undisputed and unchallenged assertions) or that he withdrew the two ARPs filed before the initiation of this action. For the reasons explained in greater length below, there is no genuine dispute of material fact that Plaintiff did not exhaust his administrative remedies pursuant to PLRA. He further does not seek discovery of evidence that would materially affect such a conclusion and does not make a related argument.[5]

---

[5] For reasons explained below, any claim that the administrative grievance procedure was unavailable to him does not materially alter the court's analysis.

The court is persuaded that conversion of the Motion to one for summary judgment is proper as to Plaintiff's conditions of confinement claims – as he had adequate notice that the Motion may be treated as one for summary judgment, and he fails to offer specific reasons why he cannot present facts essential to his opposition to Defendants' administrative exhaustion argument. Therefore, the court will exercise its discretion and convert the Motion to one for summary judgment as to Plaintiff's conditions of confinement claims.[6]

**B. Federal Rule of Civil Procedure 12(b)(6)**

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

---

[6] The court will consider Plaintiff's assertion of unavailability as to the grievance process below. (ECF No. 1 at p. 5.)

"[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

## C. Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted); *see Robinson v. Priority Auto. Huntersville,*

*Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (providing that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive").

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

## III.   <u>ANALYSIS</u>

As an initial matter, the court is ever mindful that *pro se* filings "must be construed liberally, . . . so as to do substantial justice," and are held to less stringent standards that filings drafted by lawyers. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *Erickson v. Paradus*, 551 U.S. 89, 94 (2007); Fed. R. Civ. P. 8(f); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). Such liberal construction, however, does not absolve Plaintiff from pleading a plausible claim, and this court "may not act as an advocate for a self-represented litigant" by "conjur[ing] up" issues not presented. *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310,

314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

### A.  Claims of Deliberate Indifference to Serious Medical Needs

As to Plaintiff's claims of deliberate indifference to serious medical needs, Defendants contend that Plaintiff fails to state a claim.  (ECF No. 23-1 at p. 27.)  As an initial matter, it is unclear if Plaintiff intended to assert these claims against both correctional Defendants in addition to the unidentified medical Defendant (John Doe 3).  In any event, the court's analysis here applies with the same force to all Defendants, including John Doe 3.  The court previously afforded Plaintiff an opportunity to supplement his claim of inadequate medical treatment.  (ECF No. 4 at p. 4.)  In so doing, it set forth the standard for stating an Eighth Amendment claim for denial of medical care, and instructed Plaintiff to "name the individual defendants who failed to provide him adequate medical care, state how each individual was personally involved in his care, and detail what harm resulted."  *Id.*  Plaintiff's supplement failed to address any of these deficiencies.

"The Eighth Amendment guarantees inmates the right to be free from 'cruel and unusual punishments.'"  *Johnson v. Robinette*, 105 F.4th 99, 122 (4th Cir. 2024) (quoting U.S. CONST. AMEND. VIII).  "[A] 'prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.'"  *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)).  To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).  Specifically, "to state a plausible Eighth Amendment deliberate indifference claim, the plaintiff is required to allege both 'an objective component and a subjective

component.'" *Griffin v. Mortier,* 837 F. App'x. 166, 170 (4th Cir. 2020) (quoting *Gordon,* 937 F.3d at 356)*.* "That is, the plaintiff must [allege] that the defendant prison official acted with 'deliberate indifference' (the subjective component) to the plaintiff's 'serious medical needs' (the objective component)." *Gordon*, 937 F.3d at 356  (alteration in original) (quoting *Estelle*, 429 U.S. at 104).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (noting that there is no expectation that prisoners will be provided with "unqualified access to health care"); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition.  *See Farmer*, 511 U.S. at 839–40.  Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'"  *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004));

*see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842).

The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable.*" *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (emphasis added) (quoting *Bowring v. Godwin,* 551 F.2d 44, 47–48 (4th Cir. 1977)). "[A]n inadvertent failure to provide adequate medical care" does not amount to deliberate indifference. *Estelle*, 429 U.S. at 105–06; *accord Anderson*, 877 F.3d at 543 ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."). "'Disagreements between an inmate and a physician over the inmate's proper medical care' do not cut it." *Phoenix v. Amonette*, 95 F.4th 852, 859 (4th Cir. 2024) (quoting *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)).

Plaintiff here has not alleged facts to support a plausible inference that Defendants failed to provide him with medical care for a "serious medical need." *See Heyer*, 849 F.3d at 210, *supra*. The first medical need he cites is injury to his ear that resulted from hitting a metal shelf. (ECF

No. 5 at p. 4.)  According to his allegations, he was not seen (reasonably promptly) by medical staff, and, by the time he was seen three weeks later, the injury had healed.  *Id.* at p. 5.  Plaintiff's allegation that his ear healed on its own in less than three weeks does not, without more, speak to the type of serious medical need mandating treatment or a medical provider's attention as required under the Eighth Amendment objective standard.  *See Heyer*, 849 F.3d at 210, *supra*.  Similarly, as to deliberate indifference, Plaintiff does not allege that any Defendant had knowledge (actual or constructive) of his injury.[7]

Similarly, he has failed to allege facts to support his claim that the failure to remove his cyst constitutes deliberate indifference to a serious medical need.  Plaintiff's allegations are internally inconsistent: he asserts that Defendants here refused to remove a cyst for three years, but, by Plaintiff's own admission, the cyst pre-existed his time at RCI by more than two years. (ECF No. 5 at p. 4.)  Without additional facts, the failure to remove a cyst he had had for two years prior to his time at RCI is insufficient to allege a denial of a medical necessity. Indeed, the fact that he had not had the cyst removed for more than two years before his time at RCI further weakens any claim that the cyst constitutes a serious medical need that mandates treatment and attention.  Similarly, as to deliberate indifference, Plaintiff again does not allege that any Defendant had any knowledge (actual or constructive) of his cyst or the need for its removal. Without pleading such additional facts, Plaintiff has failed to state such a claim.

For the foregoing reasons, the court will grant the Motion to the extent it seeks dismissal without prejudice of Plaintiff's claims of deliberate indifference to his medical needs.

---

[7] Plaintiff states only that Bivens, John Doe 3, and John Doe 4 (who is not identified as a Defendant in this case) never "responded to [his] calls for help" and that he "never received medical attention for [his] ear." (ECF No. 5 at p. 5.)  It is not clear whether the calls for help were related to his ear injury.  In any event, even if they were, that alone would not materially alter the court's analysis.

**B.  Administrative Remedies and Conditions of Confinement Claims**

Defendants further argue that Plaintiff has failed to exhaust his administrative remedies with respect to food, recreation, and medical care, and his claims should therefore be dismissed. (ECF No. 23-1 at p. 16–18.)

The PLRA provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Under the PLRA, "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Id.* § 1997e(h).  The term "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants.  *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). The court may dispose of a claim on this ground only if "the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense" or in "the rare, exceptional instance where administrative exhaustion"—or lack thereof—is "apparent on the complaint's face." *Custis*, 851 F.3d at 362 (citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

Ordinarily, an incarcerated person must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F. 3d at 729; *see also Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 93 (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Although the PLRA requires a prisoner to exhaust available remedies, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

DPSCS has established an "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* MD. CODE ANN., CORR. SERVS. ("C.S."), §§ 10-201, *et seq.*; MD. CODE REGS. ("COMAR") 12.07.01B(1) (defining ARP). The grievance procedure applies to the submission of a "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a). Regulations promulgated by DPSCS concerning the administrative remedy procedure define "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth in C.S. Title 10, Subtitle 2. C.S. § 10-210(a).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any Department of Corrections official or employee. *Id.* § 10-206(a). If, however, a prison has an IGO-approved grievance procedure, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO. *Id.* § 10-206(b). When the ARP process makes available a potential remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps. A prisoner is first required to file an initial ARP with the facility's "managing official." COMAR 12.02.28.05(D)(1). "Managing official" is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and under C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." An ARP request must be filed within 30 days following the complained-of incident, or within 30 days of the date on which the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process becomes relevant (and required) if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. Should either of those circumstances exist, the prisoner has 30 days within which to file an appeal to the Commissioner of Correction. COMAR 12.02.28.14(B)(5). If the Commissioner denies an appeal, the prisoner has 30 days to file a grievance with the Inmate Grievance Office ("IGO"). COMAR 12.02.28.18; COMAR 12.07.01.05(B); C.S. § 10-206(a).

When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response.

COMAR 12.07.01.04(B)(9)(a).  If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing.  C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B).  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge ("ALJ") of the Maryland Office of Administrative Hearings.  *See* C.S. § 10-208; COMAR 12.07.01.07-.08.  The conduct of such hearings is governed by statute.  *See* C.S. § 10-208; COMAR 12.07.01.07(D); MD. CODE ANN., STATE GOV'T § 10-206(a)(1).

An ALJ decision denying all relief to the inmate is considered a final agency determination.  C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2).  If the ALJ concludes, however, that the inmate's complaint is meritorious in whole or in part, the ALJ's decision constitutes a recommendation to the Secretary of DPSCS; the Secretary is then tasked with rendering a final agency determination within 15 days following receipt of the ALJ's proposed decision.  C.S. § 10-209(b)(2)(c); COMAR 12.07.01.10(B).  The final agency determination is subject to judicial review in Maryland state court so long as the claimant has exhausted his remedies.  C.S. § 10-210.  An inmate need not, however, seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g.*, *Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

The PLRA's exhaustion requirement serves several purposes, including "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."  *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (explaining that exhaustion provides

prison officials with the opportunity to respond to a complaint through appropriate administrative remedies). The PLRA's exhaustion requirement obligates prisoners to pursue the administrative grievance avenue until they receive a final denial of the claims, having pursued the administrative appellate process to its end. *Chase*, 286 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust where plaintiff did not appeal his administrative claim through all four stages of the administrative grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief").

As explained above, the court construes Plaintiff's Complaint and Supplement to assert Eighth Amendment claims based upon his conditions of confinement (in addition to the claims of deliberate indifference to his medical needs). Again, Plaintiff does not dispute that he submitted only two ARPs prior to the initiation of this action—and that both were withdrawn prior to adjudication. (ECF No. 23-8 at p. 8–11.) Nor does Plaintiff dispute that his ARPs submitted since initiation of this action either were not fully exhausted or did not relate to the claims asserted herein. (ECF No. 23-8 at p. 12–21.) There is thus no genuine dispute of material fact that Plaintiff did not complete the administrative grievance process prior to initiating this action. *See Chase*, 286 F. Supp. 2d at 530, *supra*.

Liberally construing Plaintiff's pleadings, the court considers whether, as Plaintiff seems to argue, the administrative grievance procedure was unavailable to him and thus he was not required to exhaust any such procedure. An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id.* at 635. In particular,

it rejected a "special circumstances" exception to the exhaustion requirement. *Id*. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 636. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008); *see Younger v. Crowder*, 79 F.4th 373, 380 (4th Cir. 2023) (explaining that a plaintiff did not fail to exhaust administrative remedies where none were available to him due to ongoing Intelligence and Investigative Division investigation).

The Supreme Court held in *Ross* that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth*, 532 U.S. at 738). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529–30. As a prisoner, Plaintiff is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, 534 U.S. at 528 (explaining that no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. at 643-

44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

As discussed above, Plaintiff asserts that he has not seen grievance forms and that he has submitted grievance forms but they were destroyed.  It is also undisputed that Plaintiff did submit multiple ARPs, including two prior to initiating this action that he withdrew.  On this point, the Fourth Circuit's decision in *Moss v. Harwood* is instructive:

> The Supreme Court has identified certain circumstances in which an official grievance policy is not "capable of use" in this sense, [*Ross*, 136 S. Ct. at 1859–60], and Moss argues that his case squarely presents one such circumstance: situations in which officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."). According to Moss, he was "thwarted" from using the jail's grievance system while he was on lockdown, by the denial of written grievance forms and access to the kiosk, and thus relieved of his duty to exhaust under the PLRA.
>
> The problem for Moss's argument, as the district court held, is the undisputed record evidence establishing that he *was* in fact able to take advantage of the grievance system while he was on lockdown. It is true, as the district court recognized, that Moss has presented unrebutted testimony that jail officials refused his requests for forms or access to the kiosk, *see Moss*, 2019 WL 4263826, at *11, from which a jury might find that officials took steps to thwart his access to the grievance process. But Moss also testified that he nevertheless was able to submit grievances – during the same lockdown period and under precisely those constraints – by having other inmates use his kiosk pin number to file grievances for him. *See id.* at *2–3, *6. And the record evidence bears this out: Moss submitted multiple requests and grievances through the kiosk while he was on lockdown. Most tellingly, on April 22, three days before filing this lawsuit, Moss was able to file a written grievance targeted at his medical treatment, which did not include any complaint about a disciplinary hearing. And then, weeks later, Moss – still on lockdown, and still allegedly "thwarted" from availing himself of

> the grievance process – *did* file a written grievance raising the
> hearing issue, though it was too late to satisfy the PLRA. Like the
> district court, we think this evidence of access to the grievance
> system conclusively refutes Moss's allegation that the jail's
> administrative remedies were not "available" to him.

*Moss v. Harwood*, 19 F.4th 614, 621–22 (4th Cir. 2021).  The Fourth Circuit further clarified that

"a grievance process is rendered 'unavailable' under the PLRA only if an inmate actually is

prevented from using it"; however, where "an inmate in fact is able to participate in a grievance

process, notwithstanding alleged obstacles, then that process remains 'available' for purposes of

the PLRA."  *Id.* at 623 (citing cases).

Accordingly, here, Plaintiff's assertion of obstacles to the grievance procedure is

unavailing where he does not dispute that he did, in fact, participate in such a procedure.  That

Plaintiff did not think the ARPs were turned in does not establish that the procedure itself was

unavailable.  Despite this assertion, Plaintiff again does not dispute the proffered evidence showing

the filing of his ARPs and his withdrawal of same.  Moreover, the court's conclusion is further

bolstered by the procedure itself—which is to say, persons are permitted to file an appeal to the

Commissioner of Corrections where the warden fails to respond to the ARP within the designated

timeframe.  *See* COMAR 12.02.28.14(B)(5).  As such, even crediting Plaintiff's assertion that his

ARPs did not reach the warden, he was still permitted to progress to the next stage in the grievance

process absent a response.

In view of the foregoing, the court finds there is no genuine dispute of material fact that

Plaintiff failed to exhaust administrative remedies that were available to him, notwithstanding any

alleged obstacles, and the court will therefore grant Defendants' Motion to the extent it seeks

summary judgment on Plaintiff's Eighth Amendment claims arising from his conditions of

confinement claims.[8]  Consistent with precedent recognized by the Fourth Circuit, the court will dismiss such claims without prejudice.  *See Moss v. Harwood*, 19 F.4th 614, 623 n.3 (4th Cir. 2021) (explaining that a district court granted summary judgment but "[c]onsistent with precedent, . . . specified that it was dismissing without prejudice [the plaintiff's] claim for failure to exhaust administrative remedies" and citing cases); *see Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal without prejudice of prisoner's civil rights claim for failure to exhaust); *Germain v. Shearin*, 653 F. App'x 231, 234–35 (4th Cir. 2016) (affirming district court ruling to grant summary judgment and explaining that where the plaintiff "failed to his exhaust his claims, dismissal is mandatory," and such dismissal should be without prejudice).

### C.  Request for Entry of a Strike Pursuant to 28 U.S.C. § 1915

Briefly, the court addresses Defendants' request that the court enter a strike against Plaintiff pursuant to 28 U.S.C. § 1915.  (ECF No. 23-1 at p 31.)  "[T]he PLRA regulates the circumstances under which prisoners may obtain in forma pauperis status, which allows them to pay court filing fees on a schedule instead of all up front."  *Pitts v. South Carolina*, 65 F.4th 141, 143 (4th Cir. 2023). "[A] prisoner generally may not proceed in forma pauperis, or 'IFP,' if he has previously filed three complaints dismissed for 'fail[ure] to state a claim' or as 'frivolous' or 'malicious.'" *Id.*

Section 1915(g) provides:

> [I]f the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, [he may not proceed in forma pauperis] unless the prisoner is under imminent danger of serious physical injury.

---

[8] Because the court concludes that Plaintiff has failed to exhaust his administrative remedies with respect to his claims related to the conditions of his confinement, it does not address Defendants' remaining arguments as to same.

28 U.S.C. § 1915(g).

Relevant here, the Fourth Circuit recently held that section 1915(g) "makes clear that the strike decision is solely for the district court considering a subsequent request for IFP status, and that courts are not authorized to make binding strike determinations when they dismiss prisoners' complaints." *Pitts*, 65 F.4th at 146. This binding Fourth Circuit precedent militates against Defendants' request. The court will therefore deny it.

## IV.     CONCLUSION

For the reasons set forth herein, by separate order, Defendants' Motion (ECF No. 23), construed as a motion to dismiss and a motion for summary judgment, will be granted in part and denied in part; and this action will be dismissed without prejudice.[9]

Date: February 28, 2025

/s/_____
Julie R. Rubin
United States District Judge

---

[9] To the extent Plaintiff intended to assert any state law claims in the instant action, the court declines to exercise supplemental jurisdiction over same. 28 U.S.C. § 1367(c); *Henderson v. Harmon*, 102 F.4th 242, 251–52 (4th Cir. 2024) (holding that the district court has "broad discretion" to decline to exercise supplemental jurisdiction over any remaining state law claims when it has dismissed all claims over which it has original jurisdiction) (quoting 28 U.S.C. § 1367(c))).